# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| B. RENEL FLOYD | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 17-00451-CG-N |
| | ) |
| PEM REAL ESTATE GROUP, *et al.* | ) |
|     **Defendants.** | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants HW Mobile Investco LLC, Jude Reynolds, Kristi Ridlon, Macy Proulx, Josh Ashcraft, and Derrick Williams' Motions to Dismiss (Docs. 39, 41, 43, 45, 47, and 50), Plaintiff B. Renel Floyd's Responses (Docs. 63, 64, 65, 66, 67, and 68), and Defendants' Replies (Docs. 70, 71, 73  74, 75, and 76). The pending motions was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  After careful consideration of the record, it is **RECOMMENDED** that Defendant HW Investco, LLC's motion (Doc. 45) be **DENIED**, Defendants Ridlon, Proulx, and Ashcraft's motions (Docs. 39, 41, and 43) be **GRANTED in part** and **DENIED in part**, and Defendant Reynolds' motion (Doc. 47) be **GRANTED in part** and **DENIED in part**, and Defendant Williams' motion (Doc. 50) be **GRANTED**.

## Background

On October 5, 2017, *pro se* Plaintiff B. Renel Floyd ("Plaintiff"), an African American female and former[1] tenant at Huntleigh Woods Apartment Complex in Mobile, Alabama, filed a Complaint against HW Mobile Investco LLC, Derrick Williams, Jude Reynolds, Kristi Ridlon, Macy Proulx, and Josh Ashcraft, alleging that Defendants have engaged in unlawful discrimination, and violations of the Civil Rights, Fair Housing, and Disability Acts. (Doc. 1). Defendants Reynolds, Proulx, Ridlon, and Ashcraft are or were employees of the apartment complex who interacted with Plaintiff while she resided at the complex. Defendant HW Mobile Invesco LLC appears to be the owner of the complex, and Defendant Williams is an Assistant City Attorney for the City of Mobile, Alabama.

On December 14, 2017, Plaintiff filed an Amended Complaint. (Doc. 16). The Court ordered Plaintiff to file a Second Amended Complaint, explaining the why the First Amended Complaint was deficient and providing Plaintiff an opportunity to cure those deficiencies. (Doc. 34). On February 6, 2018, Plaintiff filed her Second Amended Complaint, which is the operative complaint in this action. (Doc. 37). Defendants, who had all previously moved to dismiss the First Amended Complaint each file a renewed motion to dismiss the Second Amended Complaint.

Defendants Proulx, Ashcraft, and Ridlon have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(5)-(6), arguing that they were improperly served and that Plaintiff fails to state a claim against them. Defendant Reynolds has moved to dismiss

---

[1] It is unclear from the record whether Plaintiff still resides at the complex.

pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to state a claim against her. Defendant HW Investco LLC has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(4)-(5), for insufficient process and insufficient service of process.

## Standard of Review

Defendants have moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(4), (5), and (6). Rule 12(b)(4) allows for the dismissal of the complaint based on insufficient process. "Proper service of process requires inclusion of the summons containing, among other things, the name of the court and the court's seal." *Brown v. Hillsborough Area Reg'l Transit,* No. 8:08–CV–1465–T–33TBM, 2010 WL 455310, at * 2 (M.D.Fla. Feb.3, 2010) (citing Fed. R. Civ. P. 4(a)(1)). "A party objecting to the sufficiency of process under Rule 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." *Fly Brazil Group, Inc. v. The Government of Gabon, Africa,* 709 F.Supp.2d 1274, 1279 (S.D.Fla.2010) (citation and internal quotation marks omitted).

Rule 12(b)(5) allows for dismissal for insufficient service of process. Fed R. Civ. P. 12(b)(5). The defendant has the initial burden of challenging the sufficiency of service and "must describe with specificity how the service of process failed to meet the procedural requirements of [Fed. R. Civ. P. 4]." *Hollander v. Wolf,* No. 09–80587–CIV, 2009 WL 3336012, at *3 (S.D.Fla. Oct.14, 2009). The burden then shifts to the plaintiff to prove a *prima* facie case of proper service of process. *Id.* If the plaintiff can establish that service was proper, the burden shifts back to the defendant to "bring strong and convincing evidence of insufficient process." *Id.* (citation omitted). "The

Court may look to affidavits, depositions, and oral testimony to resolve disputed questions of fact." *Id.* (citations omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); *accord Fin. Sec. Assurance. Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007). Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' ' *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. *Id*.

## Analysis

Defendants Proulx, Ridlon, and Ashcraft have all moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6). Defendant Reynolds has moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defedant HW Investco Mobile, LLC has moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(4) and (5).

## I.    Service of Process

Defendants Proulx, Ashcraft, Ridlon, and HW Investco LLC's motions assert essentially the same legal arguments as to why Plaintiff's complaint should be dismissed under Federal Rule of Procedure 12(b)(5) for insufficient service of process. Therefore, the motions under 12(b)(5) will be treated in one discussion.

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served." *Pardazi v. Cullman Med. Ctr.,* 896 F.3d 1313, 1317 (11th Cir.1990). Therefore, where a court finds insufficient service, it is "improper for the district court to ... reach[ ] the merits in th[e] case and to ... issue[ ] a dismissal with prejudice." *Jackson v. Warden, FCC Coleman–USP,* 259 F. App'x. 181, 182–83 (11th Cir.2007). Accordingly, this Court will address Defendants' 12(b)(5) motions first. In making such a determination, "the serving party ... bears the burden of proof with regard to validity of service." *Anderson v. Dunbar,* 2009 WL 2568062, at *8 (N.D.Ga. Aug.18, 2009) (citing *Sys. Sings Supplies v. U.S. Dep't of Justice,* 903 F.2d 1011, 1013 (5th Cir.1990)); *Profit v. Americold Logistics,* LLC, 2008 WL 1902190, at *4 (N.D.Ga. Apr.25, 2008); *Profit v. Americold Logistics, LLC,* 248 F.R.D. 293, 296 (N.D.Ga.2008).

The Court of Appeals for the Eleventh Circuit has explained:

By definition, "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S. Ct. 242, 90 L. Ed. 185 (1946). A court is required to have personal jurisdiction under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution "as a matter of individual liberty" so that "the maintenance

of the suit ... [does] not offend 'traditional notions of fair play and substantial justice.' " *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–03, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003).

In the absence of valid service of process, proceedings against a party are void. *E. g., Mooney Aircraft, Inc. v. Donnelly*, 402 F.2d 400, 406 (5th Cir. 1968). When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity. *Familia de Boom v. Arosa Mercantil, S. A.*, 629 F.2d 1134, 1139 (5th Cir. 1980).

*Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. Unit A Jan. 27, 1981).[2]

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may bring a motion to dismiss based on insufficient service of process. In deciding a Rule 12(b)(5) motion, a district court may consider matters outside of the pleadings and make findings of fact based on affidavits and other evidence relevant to the issue. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). "A defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).

"[O]nce a *pro se* [] litigant is in court, he[ or she] is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*,

---

[2] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 n.1 (11th Cir. 2013).

863 F.2d 835, 837 (11th Cir. 1989). *See also Albra*, 490 F.3d at 829 ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.' " (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (per curiam)); S.D. Ala. GenLR 83.5(a).

### A. Attempted Service of Proulx, Ashcraft, and Ridlon

Plaintiff's Complaint was filed October 5, 2017. (Doc. 1). Summons were issued as to Defendants Proulx, Ashcraft, and Ridlon. (Doc. 8). The Summonses were addressed as follows:

> Huntleigh Woods Apartments
> Macy Proulx – Office
> 375 Hillcrest Rd.
> Mobile, AL 36606
>
> Huntleigh Woods Apartments
> Joshua D. Ashcraft – Office
> 375 Hillcrest Rd.
> Mobile, AL 36606
>
> Pem Real Estate Group, LLC
> Arlington Heights Apts – Office
> Kristena R. Boyd Ridlon
> 7070 Grelot Rd.
> Mobile, AL 36695

(Doc. 8 at 5). Plaintiff mailed each of these Summonses (and a copy of the Complaint) via Certified Mail. Proulx and Ashcraft's return card were signed by Jude Reynolds. (Docs. 10-11). Ridlon's return card is difficult to read but appears to be signed by someone whose initials are J.B. (Doc. 12). The signature is unlike that of Jude Reynolds. (Compare Docs. 10-11 with 12). Neither the "Agent" or "Addressee" box was checked on Proulx, Ashcraft, or Ridlon's return cards.

Federal Rule of Civil Procedure 4(e) states that, with certain inapplicable exceptions,

> an individual…may be served in a judicial district for the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Piecing together the allegations of the Second Amended Complaint, Defendants Proulx, Ashcraft, and Ridlon were all employed at Huntleigh Woods during the time period relevant to Plaintiff's allegations. Plaintiff alleges that they were supervised by Jude Reynolds and that Reynolds regularly signed for packages and mail for apartment tenants. According to Plaintiff, because Reynolds allegedly managed Defendants Proulx, Ashcraft, and Ridlon, she was authorized to receive service of process on their behalf.

No personal service was attempted. Thus, the methods permitted under Fed. R. Civ. P. 4(e)(2) are not at issue here.[3]  The pertinent inquiry is whether Plaintiff

---

[3] *See Johnson v. Champions*, No. CIV.A. 12-0334-WS-M, 2013 WL 275957, at *1 (S.D. Ala. Jan. 24, 2013)( "The plaintiffs attempted service on Harless by certified mail. Under the federal rules, the

perfected service under Federal Rule of Civil Procedure 4(e)(1).[4] This rule provides that an individual "may be served in a judicial district for the United States by…following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made…." Fed. R. Civ. P. 4(e)(1). Plaintiff attempted service via certified mail, which is permitted under Alabama law:

> …[T]he attorney *or party* filing the process and complaint or other document to be served may obtain a copy of the filed pleading from the clerk or, if the pleading was filed electronically, use the copy returned electronically by the clerk. The attorney *or party* shall then place that copy of the process and complaint or other document to be served in an envelope and address the envelope to the person to be served with instructions to forward. In the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate subdivision. The attorney or party shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. The return receipt shall be addressed to the clerk of the court issuing the process and shall identify the case number of the case in which the pleading has been filed. Upon mailing, the attorney or party shall immediately file with the court an "Affidavit of Certified Mailing of Process and Complaint." That affidavit shall verify that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with this rule.

---

'textual difference between mailing and delivering should be strictly respected....' *Prisco v. Frank,* 929 F.2d 603, 604 (11th Cir.1991); *accord Dyer v. Wal–Mart Stores, Inc.,* 318 Fed. Appx. 843, 844 (11th Cir. 2009) ('The term 'delivering' appears to refer to personal service.'). Other Circuits have routinely concluded that mailing or certified mailing does not constitute "delivery" for purposes of service of process. The plaintiffs thus have not perfected service on Harless in accordance with *Rule 4(e)(2)*.")(footnote omitted, emphasis added).

[4] Providing that an individual "may be served in a judicial district for the United States by…following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made…." Fed. R. Civ. P. 4(e)(1).

Ala. R. Civ. P. 4(i)(2)(B)(ii)(emphasis added). Further, "[s]ervice by certified mail shall be deemed complete…from the date of delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt." Ala. R. Civ. P. 4(i)(2)(C). For purposes of Alabama Rule 4(i)(2)(C), " 'agent' means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee. Such agent's authority shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint or the court determines that the evidence proves the addressee did actually receive the summons and complaint in time to avoid a default." *Id.*

Defendants Proulx, Ashcraft, and Ridlon argue that Plaintiff failed to perfect service of process because the persons who signed for the mail, Jude Reynolds and J.B., did not check the box labeled "agent" on the return receipt proving that he or she was authorized to receive mail on behalf of Defendants. Generally, Plaintiff argues that it is clear from the record that Defendants were aware of this action and received notice of it, as evidence by their participation in the litigation.

Ordinarily, "[a] defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam). Further, Plaintiff did not comply with the directives contained in Ala. R. Civ. P. 4(i)(2)(B)(ii). However, the Court must carefully examine the language and requirements of Ala. R. Civ. P. 4(i)(2)(C), which permits service via certified mail. Defendants cite several cases that support its contention that a plaintiff must strictly adhere to the service rules to confer jurisdiction. Notably however, each case cited by

Defendant is distinguishable from the facts in this case. Those cases involved circumstances where a default judgment or motion for entry of default has been granted against the defendant and service was not strictly adhered to and therefore, improper. *See Johnson v. Champion,* No. 12–334–WS–M, 2013 WL 275957 (S.D.Ala. Jan. 24, 2013); *McDermott v. Tabb*, 32 So. 3d 1 (Ala. 2009); *Parks v. Quality Serv. Integrity*, No. 2:13-CV-909-WKW, 2015 WL 6872498, at *1 (M.D. Ala. Nov. 9, 2015).

The court agrees that in those circumstances, it was questionable whether the defendants received service in time to avoid a default. Ala. R. Civ. P. 4(i)(2)(C) states:

> (C) When effective. Service by certified mail shall be deemed complete and the time for answering shall run from the date of delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt. Within the meaning of this subdivision, "agent" means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee. Such agent's authority shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint **or the court determines that the evidence proves the addressee did actually receive the summons and complaint in time to avoid a default. An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default**….

Ala. R. Civ. P. 4(i)(2)(C) (emphasis added). Here, the evidence proves that any alleged defects in Plaintiff's service of process have not resulted in a failure to inform Defendants Proulx, Ashcraft, and Ridlon of the action within time to avoid default, unlike the defendants in the cases cited by Defendants. (*See* Docs. 16-22).

While Defendants have contested Jude Reynolds and J.B.'s authority to accept service of process on Proulx, Ashcraft, and Ridlon's behalf, they have made no argument that they were in danger of default judgment and thus, were not harmed.

Alabama Rule of Civil Procedure 4(i)(2)(C) does not allow for an action to be dismissed for improper service in circumstances like these. "An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default." Ala. R. Civ. P. 4(i)(2)(C). Accordingly, the undersigned recommends that Defendants Proulx, Ashcraft, and Ridlon's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) be **DENIED**.[5] However, as discussed later in this Report and Recomenndation, the undersigned **RECOMMENDS** that Defendants Proulx, Ashcraft, and Ridlon's motions to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) be **GRANTED**.

B.     **Purported Service of HW Investco, LLC**

Federal Rule of Civil Procedure 4(h), which governs service of a corporation, partnership, or association, states:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> **(1)** in a judicial district of the United States:
>
> > **(A)** in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> >
> > **(B)** by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process

---

[5] The undersigned acknowledges that Floyd failed to comply with the requirements of the applicable Alabama service rule. However, the plain language of the statute compels this outcome. Because Defendants were aware of the Complaint, First Amended Complaint, and Second Amended Complaint, and able to avoid default, dismissal based on improper service is inappropriate under the circumstances present here. *See Johnson v. Titlemax of Alabama, Inc.,* No. 3:13-CV-306-WKW, 2013 WL 5954393, at *1 (M.D. Ala. Nov. 7, 2013) (declining to dismiss pursuant to Rules 12(b)(4)-(5) on similar grounds).

> and--if the agent is one authorized by statute and the statute so
> requires--by also mailing a copy of each to the defendant; or
>
> **(2)** at a place not within any judicial district of the United States, in any
> manner prescribed by Rule 4(f) for serving an individual, except
> personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h). Plaintiff's service attempts were made via Certified Mail, thus Fed. R. Civ. P. 4(h)(1)(B-(C) are not applicable. Accordingly, the Court looks to Rule 4(h)(1)(A), which provides for service in compliance with Alabama law. *See* Fed. R. Civ. P. 4(e)(1)("Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by….following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made….").

Under Alabama law, service of process shall be made "[u]pon a domestic or foreign corporation or upon a partnership, limited partnership, limited liability partnership, limited liability company, or unincorporated organization or association, by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Ala. R. Civ. P. 4(c)(6); *See also Alfa Corp. v. Alfagres, S.A.,* 385 F.Supp.2d 1230, 1238 (M.D.Ala.2005) ("when attempting to serve a corporation by certified mail, the summons and complaint must be addressed to either a managing or general agent, or any agent authorized by appointment or by law to receive service of process, pursuant to Rule 4(c)(6)") (internal quotation marks omitted).

### 1. Plaintiff's Initial Complaint

The Complaint (Doc. 1) listed Professional Equity Management *et al.* in its caption and list of Defendants. (Doc. 1 at 1, 17). The Summons prepared by Plaintiff listed "Professional Equity Management," "PEM Real Estate Group LLC, *et al*," and "HW Investco, LLC, *et al*" in its caption. (Doc. 8 at 1). However, the Summons was addressed only to "National Registered Agents, Inc." (Doc. 8 at 1). Plaintiff filed a "proof of service" for "PEM Real Estate Group" using a certified mail receipt card addressed to "National Registered Agents, Inc." and signed by Laura McHaney. (Doc. 15). No summonses addressed to "Professional Equity Management," "PEM Real Estate Group LLC, *et al*," or "HW Investco, LLC, *et al*" were proposed or issued. At best, the only entity Plaintiff *may* have served with the initial complaint was "PEM Real Estate Group."

### 2. Plaintiff's First Amended Complaint

On December 14, 2017, Plaintiff filed her First Amended Complaint. (Doc. 16). The caption listed "Professional Equity Management," "PEM Real Estate Group LLC, *et al*," and "HW Investco, LLC, *et al*" as defendants. (*Id*. at 1). The Certificate of Service stated that a copy of the First Amended Complaint was "mailed/sent" to "National Registered Agents, Inc." and the 5 individual defendants. (*Id*. at 21).

In an Order dated January 9, 2018, the undersigned cautioned Plaintiff as follows:

> The Amended Complaint appears to name Defendants who were not named in the Complaint. For example, the Amended Complaint (Doc. 16 at 20), may be attempting to indicate that the following parties are Defendants: PEM Real Estate Group, LLC, et al., Property Equity

Management, HW Investco, LLC, et al., and Paul E. Mashni, Principal Member/CEO. (Doc. 16 at 20). Below this section, Plaintiff states "Defendant List: 6," and provides the following Defendants: National Registered Agents, Inc., Jude Reynolds, Kristena R. Boyd Ridlon, Macy Proulx, Joshua D. Ashcraft, and Derrick Williams, but does not include PEM Real Estate Group, LLC, et al., Property Equity Management, HW Investco, LLC, et al., and/or Paul E. Mashni, Principal Member/CEO. The next page (Doc. 16 at 21) indicates that a copy of the Amended Complaint was "mailed/sent" to the six Defendants in the "Defendant List," but there is no indication that a copy of the Amended Complaint was provided to PEM Real Estate Group, LLC, et al., Property Equity Management, HW Investco, LLC, et al., or Paul E. Mashni, Principal Member/CEO. Accordingly, Plaintiff is instructed that her Second Amended Complaint shall *clearly identify* which persons she is naming as Defendants in this suit.

(Doc. 34 at 3-4). Plaintiff was also reminded to comply with the requirements for service.

### 3. Plaintiff's Second Amended Complaint

On February 6, 2018, Plaintiff filed a Second Amended Complaint. (Doc. 36). The caption listed "Professional Equity Management," "PEM Real Estate Group LLC, *et al*," and "HW Investco, LLC, *et al*" in its caption. (*Id.* at 1). The Certificate of Service states that the Second Amended Complaint was "mailed/delivered/sent to" counsel for "PEM Real Estate Group, LLC, *et al* (staff)" and counsel for Derrick Williams. (Doc. 37 at 20).

In a page Plaintiff was permitted to submit after her Second Amended Complaint was filed, Plaintiff lists the following Defendants:

> PEM Real Estate Group, LLC et al.
> Property Equity Management
> HW Investco, LLC, et al.
> Huntleigh Woods Apartments/formerly Colonial Village at
> Huntleigh Woods

Paul Mashni, Principal Member, CEO
14822 N 73rd Street Ste 101
Scottsdale, AZ 85260

Immediately under that list, Plaintiff states, "Defendant List: 6 (Collectively)" and lists National Registered Agents, Inc. and the five individual defendants in this action. (Doc. 38-1).

It is clear from the record that the only Summons issued and possibly served in this matter was sent to "National Registered Agents, Inc." via Certified Mail (Doc. 15).

Neither PEM Real Estate Group, LLC or Professional Equity Management has filed an answer or responsive pleading in this matter. Thus, it appears that they may not have ever received notice of this suit. The notion that the entities are "linked" because they share addresses or overlap does not equate to establishing proper service. Simply adding a name to a Defendant list does not effect proper service.

### 4.  Plaintiff's Attempt to Serve HW Mobile Investco, LLC via Certified Mail

The Summons is addressed to "National Registered Agents, Inc," and was sent via Certified Mail. (Doc. 15). HW Mobile Investco, LLC admits that National Registered Agents, Inc. is the company's registered agent for service of process in Alabama. (Doc. 46 at 1). However, the summons issued was for PEM Real Estate Group, not HW Mobile Investco, LLC. HW Mobile Investco, LLC has moved the Court to dismiss this action under Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

As with the individual defendants discussed above, the Court must determine whether HW Mobile Investco, LLC was served in accordance with Alabama law

pursuant to Federal Rule of Civil Procedure 4(h) and 4(e)(1)(Providing that an individual "may be served in a judicial district for the United States by…following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made….").

Pursuant to Alabama Rule of Civil Procedure 4(c)(6) service upon such an entity "by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Plaintiff has failed to comply with these service requirements. However, as with the individual defendants above, HW Investco, LLC was informed of this action "within time to avoid a default…" Ala. R. Civ. P. 4(i)(2)(C). ("An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default…")

Upon consideration, the undersigned does not find dismissal pursuant to Rule 12(b)(4)-(5) appropriate and Defendant HW Investco LLC's motion to dismiss based on insufficient process and insufficient service of process is due to be **DENIED**. *See Johnson v. Titlemax of Alabama, Inc.,* No. 3:13-CV-306-WKW, 2013 WL 5954393, at *3 (M.D. Ala. Nov. 7, 2013) ("Defendant concedes that CT Corporation Systems is authorized to receive its mail and it was not in danger of default judgment and thus, was not harmed. Rule 4(i)(2)(C) does not allow for an action to be dismissed for improper service in circumstances like these. 'An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default.' Ala. R. Civ. P. 4(i)(2)(C). Accordingly,

Defendant's second argument also fails, and service was proper. Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), (4), and (5) is due to be denied."). Similarly, here, Defendants concede that National Registered Agents was their registered agent for service of process in Alabama and has not argued that the individual who signed for the mail was unauthorized to do so.[6]

## II.  Failure to State a Claim

Defendants Williams, Ridlon, Reynolds, Ashcraft, and Proulx have all moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has had two prior opportunities to amend her complaint. Plaintiff's Second Amended Complaint contains long stretches of narrative and background. Importantly, "Count One," found at page 18 of the Second Amended Complaint (Doc. 37 at 18), contains several claims for relief, and contains allegations of violations of the Fair Housing Act, sex/gender discrimination, and a breach of contract claim. Plaintiff alleges that all Defendants violated the following statutes: 42 U.S.C. § 3604(a)-(b) and 42 U.S.C. § 1981.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a defendant's motion to dismiss under Rule 12(b)(6), the

---

[6] As Defendant HW Mobile Investco, LLC acknowledges, it is only mentioned once in the Second Amended Complaint and there do not appear to be any allegations concerning its relationship with Plaintiff and/or the other Defendants. At this time Defendant HW Mobile Investco, LLC has only moved for dismissal under Fed. R. Civ. P. 12(b)(4)-(5).

allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). But the court need not accept the plaintiff's legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## A.  Fair Housing Act Claims

Plaintiff attempts to allege two claims under the Fair Housing Act ("FHA"). First, in a section entitled "Racial Discrimination," Plaintiff alleges, "by the conduct set forth above, Defendants did violate ... 42 U.S.C.A. 3604(a) Denied dwelling [sic] to plaintiff based on race and family affiliation ... [and] ... 42 U.S.C.A. §3604(b) Discriminated in terms, conditions, privileges, and provisions of services of extermination, leaking roof, notices." (Doc.37 p.18 ¶¶65-66). Second, in the section entitled "Breach of Contract/Lease," Plaintiff says: "According to all my leases there, the rent payments were due, 'on or before the 6th', though I paid on or before the 5th of each month my payments were flagged as late. Defendants discriminated in terms, conditions, privileges, and provisions of services in connection with the rental property because of race and family affiliation, in violation of [42 U.S.C. § 3601; Sec. 804. [42 U.S.C. § 3604(a)(b)]." (Doc.37 p.18 ¶¶67) (bracketed material in original).

The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... national origin" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... national origin." 42 U.S.C. § 3604(a)-(b).

Based on the contents of the Second Amended Complaint, it appears Defendants Proulx, Ridlon, Ashcraft, and Reynolds were employed in the leasing office of Huntleigh Woods Apartments, and Defendant Reynolds may have been a supervisor. An "individual agent can be held liable [if]...[s]he personally committed or contributed to a Fair Housing Act violation." *Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2011 WL 5508654, at *3 (S.D. Fla. Nov. 9, 2011) (Cohn, J.); *accord Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979).

### 1. Plaintiff's § 3604(a) Claim

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." § 3604(a). In her § 3604(a) claim, Plaintiff alleges that she was "denied dwelling...based on race and family affiliation." (Doc. 37 at 18).[7] The Complaint lacks any allegation that Plaintiff was denied a dwelling or that a dwelling was unavailable.

---

[7] "To prove familial-status discrimination, Plaintiff must show that Defendants discriminated against her 'in the terms, conditions, or privileges of ... rental of a dwelling ... because of familial status....' 42

Circumstances other than a denial of a dwelling to a prospective homeowner or tenant may render housing "unavailable," such as where discriminatory conduct after the owner's or tenant's acquisition of the dwelling results in actual or constructive eviction. *See Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016) (actual eviction); *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 723 F. Supp. 2d 14, 23 (D.D.C. 2010) (collecting cases regarding constructive eviction). To proceed on a constructive-eviction theory, courts often require that a plaintiff allege that the discriminatory conduct caused his dwelling to be " 'unfit for occupancy,' often to the point that [he] is 'compelled to leave.'" *Bloch v. Frischholz*, 587 F.3d 771, 777 (7th Cir. 2009); *see e.g., Greater New Orleans Fair Hous. Action Ctr.*, 723 F. Supp. 2d at 23 & n.13 (allegations regarding the devastating effects of hurricanes, and the defendants' allegedly discriminatory methods of distributing relief to affected homeowners, stated a plausible claim that the defendants' conduct prevented African American homeowners from being able to live in their houses and thus made housing "unavailable" to them under the FHA). By contrast, a mere decline in the value, desirability, or habitability of a dwelling is insufficient to make out a claim that housing is "unavailable" under Section 3604(a).

---

U.S.C. § 3604(b). Familial status is defined, in short, as one or more children (under 18 years of age) living with a parent or legal guardian. 42 U.S.C. § 3602(k)(1). Section 3604(b) thus operates to prohibit landlords from refusing to rent to (or from evicting) a person because that person has children living with them." *Woodard v. Fanboy, L.L.C.,* 298 F.3d 1261, 1264–65 (11th Cir. 2002)(footnote omitted). Plaintiff has not alleged any facts supporting discrimination on the basis of family status because she has not alleged she has been discriminated against as a result of a child or children living with her. Plaintiff has failed to state a FHA claim based on family status. Thus, only FHA violations on the basis of race are at issue here.

*See Greater New Orleans Fair Hous. Action Ctr.*, 723 F. Supp. 2d at 23 (collecting cases); *Bloch*, 587 F.3d at 111 ("Availability, not simply habitability, is the right that [Section] 3604(a) protects.") (citing *Southend Neighborhood Improvement Ass'n v. St. Clair Cty.*, 743 F.2d 1207, 1210 (7th Cir. 1984)); *see e.g., Cox v. City of Dallas*, 430 F.3d 734, 740-43 (5th Cir. 2005) (city's actions in allowing a landfill to operate near a primarily African American residential area—while perhaps harming the housing market, home values, and homeowners' "intangible interests" in their properties— did not make housing "unavailable" under the statute); *Southend Neighborhood Improvement Ass'n*, 743 F.2d at 1210 (county's alleged refusal to maintain the properties that it owned in primarily African American neighborhoods, even if damaging the intangible interests of neighboring property owners, did not affect the availability of housing in a manner proscribed by the FHA); *Laramore v. Ill. Sports Facilities Auth.*, 722 F. Supp. 443, 446, 452 n.5 (N.D. Ill. 1989) (government agency's construction of a baseball stadium in an almost exclusively African American area— which would subject residents to noise, intense lights, limited access to their residences, and decreased security—did not implicate the availability of housing under Section 3604(a)).

Plaintiff does not allege any facts indicating she was evicted or constructively evicted. In fact, she indicates that she renewed her lease on several occasions. Accordingly, Plaintiff has failed to state a claim against any Defendant under 42 U.S.C. § 3604(a) and the undersigned **RECOMMENDS** that all Defendants' Motions

to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are due to be **GRANTED** as to Plaintiff's § 3604(a) claim.

## 2.    Plaintiff's § 3604(b) Claim

Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  In her § 3604(b) claim, Plaintiff alleges that she was discriminated against "in terms, conditions, privileges, and provisions of services of extermination, leaking roof, notices [] Plaintiff has suffered damages, loss of income, loss of work, emotional anguish, anxiety, humiliation and damaged Payment History as a result of Defendants' discriminatory actions and disregard for Fair Housing Rights of others." (Doc. 37 at 18). These allegations continue, noting breach of contract/lease based on the allegation that her timely rent payments were flagged as late. (Doc. 37 at 18).

### a.    Allegations Against Defendant Macy Proulx

With regard to Defendant Proulx, Plaintiff's Amended Complaint fails to state a claim. As Defendant points out, the Second Amended Complaint mentions Proulx six times. (Doc. 40 at 5-6). Only three references to Proulx involve interaction between Plaintiff and Proulx.  Assuming all of Plaintiff's allegations with regard to Proulx are true, as the undersigned must at this stage, none of the allegations present a plausible claim for a FHA violation.

In summary, Plaintiff alleges that Proulx accepted Plaintiff's rent payments on several occasions, waved to Plaintiff's mother, made a comment to someone indicating that she had seen Plaintiff, told a tenant not to let Plaintiff's mother pet the tenant's dog, spoke ill of Plaintiff in the presence of other tenants, and "allowed" another tenant to have others living in his apartment. [8]

These allegations do not present a plausible claim for discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race…" 42 U.S.C. § 3604(b)

---

[8] Defendant Proulx has summarized the allegations as follows:

> • Plaintiff alleges that on December 4, 2015, her mother went to the apartment complex office pay Plaintiff's rent and "Macy Proulx took the payment and agreed to initial it." [Doc.37 p.10 ¶15]
>
> • Plaintiff alleges that, on May 5, 2016, when her mother ("housesitter") went to the apartment complex office to pay Plaintiff's rent, "[s]he walked in, Macy was planted in front of Heather Lott's desk, Heather and Macy both waved quietly, so my housesitter did the same …." [Doc.37 p.10 ¶17]
>
> • Plaintiff alleges that, on August 5, 2016, when her mother went to the apartment complex office to pay the rent, the office "was locked, closed, no one inside," but another tenant fetched Ms. Proulx who came and accepted the rent. [Doc.37 p.11 ¶19]
>
> • Plaintiff alleges on June 8, 2016, "I went by the office to ask about packages delivered and other concerns" and "When I left, from outside the door, Macy Proulx could be heard saying, 'So that's J205!'" [Doc.37 p.13 ¶35]
>
> • Plaintiff also alleges "Tenants were 'warned' by Mrs. Reynolds, and Macy Proulx, sometimes, while we were in hearing distance! 'be sure to watch them [me and my mother] because its no telling what they might do', 'don't park next to them, if we don't want your tag switched.' Macy Proulx told one tenant in 2016, not to let my mother pet her dog, named Gizmo." [Doc.37 p.14 ¶41]
>
> • Plaintiff also alleges that Property Manager Jude Reynolds allowed a tenant in apartment J105 to have others living his apartment, which resulted in "frequent domestic violence and loud battles," and "All of this taking place and Jude Reynolds, Macy Proulx, and Josh Ashcraft allowed it." [Doc.37 pp.17-18 ¶¶61-64]

(Doc. 40 at 6).

with regard to Defendant Proulx. Accordingly, the undersigned **RECOMMENDS** that Defendant Proulx's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. 39) be **GRANTED**.

### b.    Allegations Against Defendant Josh Ashcraft

The Second Amended Complaint indicates that Defendant Ashcraft works in the apartment complex's maintenance department. (Doc. 37 at 12). Reading Plaintiff's allegations about Ashcraft broadly, she indicates that Ashcraft accompanied a painter to Plaintiff's apartment and stated that he had come with the painter because "you're wishy washy about them" and that Ashcraft was untruthful about whether a repair (which was ultimately accomplished) could be completed. (Doc. 37 at 12 ¶ 27, 29). She also mentioned several conversations Ashcraft had with her mother that Plaintiff found offensive and that Ashcraft had something to do with her power being cut on and off, though this allegation is unclear. (Doc.37 at 13, ¶ 30, 31). Additionally, Plaintiff alleges that Ashcraft did not deliver information and memos to her that were delivered to other tenants and that he entered her apartment to go through her and her mother's belongings. (Doc. 37 at 13-14 ¶ 36, 40). Plaintiff also alleges that Ashcraft befriended another tenant and helped that tenant harass Plaintiff and her mother. (Doc. 37 at 16, ¶ 52).

Other than conclusory, non-specific allegations of racial discrimination throughout the Second Amended Complaint, Plaintiff fails to allege that any of Ashcraft's behavior was motivated by Plaintiff's race.[9] Further, none of the

---

[9] In Paragraph 31 of the Second Amended Complaint, Plaintiff states: "**Josh Ashcraft**, was chatting as my mother was leaving the complex. She calls me her little ankle-biter. Josh Ashcraft, asked, '**Who,**

allegations against Ashcraft indicate that he "personally committed or contributed to a Fair Housing Act violation." *Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2011 WL 5508654, at *3 (S.D. Fla. Nov. 9, 2011) (Cohn, J.); *accord Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979). Plaintiff does not allege that Ashcraft had any authority over the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). As Defendant has failed to state a claim against him, the undersigned **RECOMMENDS** that Defendant Ashcraft's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. 41) be **GRANTED**.

### c. Claims Against Defendant Kristi Ridlon

Defendant Ridlon is mentioned one time in the Second Amended Complaint. In Paragraph 59, Plaintiff states:

> When I retuned to Mobile, they had never come to fix the roof. When it rained the plastic bins would have to be placed on the carpet, and plastic bags under the bins. I asked my parent to stay close to the apartment in case it rained, the carpet wouldn't get ruined. I returned to the office and this time made the request to new manager, Kristena Boyd Ridlon. She too wrote it down, and waved me off from signing it as stated in lease. I was not comfortable, but didn't want to anger anyone. I let it go. I trusted her.

(Doc. 37 at 17, ¶ 59). This passing reference to Defendant Ridlon fails to state a claim under the Fair Housing Act. Accordingly, the undersigned **RECOMMENDS** that Defendant Ridlon's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. 43) be **GRANTED**.

---

your daughter?' when she confirmed, yes, he in turn said, '**No offense, I call my daughter monkey.' Racial Slur**." (Doc. 37 at 13, ¶ 31).

### d. Claims Against Defendant Jude Reynolds

The Second Amended Complaint alleges that Defendant Reynolds became the property manager at Huntleigh Woods Apartments in October 2015. (Doc. 37 at 2, Preface). First, as Defendant indicates, the FHA has a two year statute of limitations. Thus, any claims occurring prior to October 5, 2015 are barred.

Plaintiff alleges that Reynolds has violated § 3604(b) due to discriminatory treatment with regard to extermination services, leaking roof, "notices," and breach of contract related to flagging several of Plaintiff's rental payments as late. (Doc. 37 at 18), ¶65-67).

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b). Plaintiff alleges that Defendant Reynolds has discriminated against her in violation of the FHA.

Defendant Reynolds moves for dismissal arguing the allegations contained in the Second Amended Complaint doe not plausibly allege Reynolds personally discriminated against Plaintiff and fails to present factual allegations related to extermination, leaking roof, or notices. (Doc. 48 at 5). With respect to Plaintiff's allegations of FHA violations related to extermination, leaking roof, or notices, Defendant Reynolds is correct and Plaintiff's claims related to these items are due to be **DISMISSED**.

With regard to Plaintiff's claims that her rent payments were discriminatorily marked as late and that the terms of her lease were unfairly altered or enforced, Defendant Reynolds argues that Plaintiff's claims are "factually flawed." (Doc. 40 at 6-7). At this stage of the litigation, Plaintiff has provided sufficient facts to avoid a motion to dismiss as to this portion of her §3604(b) claim. She has alleged that Defendant Reynolds imposed rules and penalties upon her that were not imposed on non-minority tenants. Accordingly, Defendant Reynolds' motion to dismiss Plaintiff's § 3604(b) claim is **DENIED.**[10]

### e. Claims Against Defendant Derrick Williams

The sum total of Plaintiff's factual allegations against Defendant are as follows:

> 42. After I had gone through a series of vaccinations in June 2016, to get back in the country, I left for Africa in July 2016, to conduct research. My housesitter left her cell phone and was leaving my apartment to go get it. Josh Ashcroft, mimicked pulling out a rifle and shooting her twice from across the parking lot. Guns make my parent anxious, she has PTSD[11] due to almost being shot while inside her home sitting on the sofa, moments before moving to a chair. This information was known by few,

---

[10] Defendant Reynolds argues that § 3604(b) is not applicable to post-acquisition discrimination in the provision of services. (Doc. 48 at 5-6). However, this appears to be an unsettled area of the law. *See e.g. Smith v. Zacco*, No. 5:10-cv-360-TJC-JRK, 2011 WL 12450317, at *6–7 (M.D. Fla. Mar. 8, 2011) (holding that post-acquisition conduct may be actionable under § 3604(b) against a homeowners' association); *Savanna Club Worship Serv., Inc. v. Savanna Club Homeowners' Ass'n, Inc.*, 456 F. Supp. 2d 1223, 1228–30 (S.D. Fla. 2005) (holding that post-acquisition conduct may be actionable under § 3604(b) against a homeowners' association due to the unique positions of the owners and relying on Florida state law regarding homeowners' associations); *Richards v. Bono*, No. 5:04-cv-484-OC-10GRJ, 2005 WL 1065141, at *3 (M.D. Fla. May 2, 2005) (holding that the unique circumstances of the landlord-tenant relationship render post-acquisition conduct actionable under § 3604(b) against a landlord: "Because the plain meaning of 'rental' contemplates an ongoing relationship, the use of that term in § 3604(b) means that the statute prohibits discrimination at any time during the landlord/tenant relationship, including after the tenant takes possession of the property.").

[11] PTSD is an acronym for post-traumatic stress disorder.

> Mr. Derrick Williams was one of them. Mr. Derrick Williams was not acting in the capacity of exercising his duties, when this was shared. I wrote a letter to the company about it, I was very worried, scared, and upset.
>
> ...
>
> 55. September 11, 2016, almost holds a nightmare for my housesitter, how would anyone know that unless told by the only person who had the medical record, Derrick v. Williams of the City Attorney's Office.

(Doc. 37 at 14-16, ¶¶ 42, 55). These allegations fail to state a plausible claim for relief against Williams. There is no allegation that Plaintiff and Williams were in a contractual relationship or that Williams had any authority related to the apartment complex. Thus, Plaintiff's FHA claims against him fail.

Additionally, given a broad reading, these sparse allegations indicate that Plaintiff's complaint is that Williams allegedly shared information about her mother's PTSD medical condition with employees of Huntleigh Woods Apartments, which she claims harmed her mother. (See Doc. 37 at 14, ¶41; 16, ¶55). Plaintiff's response to the motion to dismiss (Doc. 63) highlights events allegedly involving Williams that were the subject of the claims against Williams in *Kennedy v. Warren Properties, LLC,* No. CV 17-00114-KD-N, 2017 WL 5894542 (S.D. Ala. Nov. 29, 2017). Namely, Plaintiff alleges that Williams received private information about an incident concerning her mother almost being shot and having PTSD while acting as a City Attorney in relation to the cases which were the subject of the *Kennedy* lawsuit. Her allegation against Williams in this lawsuit is that Williams must have shared that information with someone at the Huntleigh Woods

Even if Plaintiff's allegations sufficient to state a cause of action against Williams, it is well-established that "pro se individuals cannot litigate on behalf of others." *Bullock v. Strickland,* 2017 WL 1029111, *1 (M.D. Ala. Mar. 16, 2017); *see also Charest v. Williams*, 2008 WL 686621, *1 (M.D.Ala., 2008)(A pro se litigant may not litigate the claims of others because "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'"). The allegations of the Second Amended Complaint simply do not support any plausible claim by Plaintiff against Williams. Accordingly, the undersigned RECOMMENDS that Defendant Derrick Williams' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**.

### B. Sex Discrimination Claims

The Second Amended Complaint makes general reference to race discrimination and sexual discrimination but "Count One" is the only location where specific statutes are cited. (Doc. 37 at 18). As Defendants have correctly argued, 42 U.S.C. § 1981 prohibits discrimination on the basis of race. It does not address discrimination on the basis of sex or gender. *See Jackson v. Bd. of Comm'rs of the Hous. Auth. of Prichard*, 2017 U.S. Dist. LEXIS 133133, *20, 2017 WL 3597882 (S.D. Ala. Aug. 21, 2017) ("42 U.S.C. § 1981 has been construed not to reach claims of sex discrimination") (citing *Givens v. Chambers*, 548 F. Supp.2d 1259, 1268-69 (M.D. Ala. 2008) ("Plaintiffs seek redress for sexual discrimination and sexual harassment under § 1981 ..., but these claims fail because §1981 provides rights and remedies only with respect to racial discrimination.")); *Ackey v. UPS*, 2009 U.S. Dist. LEXIS

138049, *20 (N.D. Ga. Jan. 12, 2009) ("gender discrimination claims are not cognizable under Section 1981"); *Gorman v. Roberts*, 909 F. Supp. 1493, 1499 (M.D. Ala. 1995) ("Section 1981 only applies to racial discrimination, not to discrimination based upon … sex.").

For this reason, Plaintiff has failed to state a claim under 42 U.S.C. § 1981 and the undersigned **RECOMMENDS** that each Defendant's motion to dismiss be **GRANTED** as to this claim and that Plaintiff's § 1981 claims be **DISMISSED**.

## CONCLUSION

Upon consideration of the foregoing the undersigned **RECOMMENDS** as follows:

- Defendant HW Investco Mobile's Motion to Dismiss pursuant to Federal Rules of Civil Procedure be **DENIED.** (Doc. 45)

- Defendants Macy Proulx, Kristi Ridlon, and Josh Ashcraft's Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) be **DENIED** and Defendants Macy Proulx, Kristi Ridlon, and Josh Ashcraft's Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**. (Docs. 39, 41, 43).

- Defendant Jude Reynolds' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED** as to claims occurring before October 5, 2015 and be **DENIED** as to Plaintiff's § 3604(b) claims occurring after October 5, 2015 and **GRANTED** as to Plaintiff's § 3604(a) and § 1981 claims. (Doc. 47).

- Defendant Derrick Williams' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**. (Doc. 50).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file

specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** and **ORDERED** this the 17th day of August 2018.

*/s/     Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**